**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **YOLANDA VESSELL and**<br>**ROGERS VESSELL** | **CIVIL ACTION** |
| **VERSUS** | |
| **WAL-MART STORES, INC.** | **NO. 07-228-D-M2** |

## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

     **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

     Signed in chambers in Baton Rouge, Louisiana, January 22, 2008.

                                           **MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| YOLANDA VESSELL and<br>ROGERS VESSELL | CIVIL ACTION |
| VERSUS | |
| WAL-MART STORES, INC. | NO. 07-228-D-M2 |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court concerning the issue of whether the requisite jurisdictional amount exists for purposes of diversity jurisdiction. In accordance with the Court's Order dated November 1, 2007 (R. Doc. 9), defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), has submitted supplemental briefing and evidence relating to that issue. (R. Doc. 10). Plaintiffs, Yolanda and Rogers Vessell ("plaintiffs"), have not filed a response to Wal-Mart's supplemental brief, despite being given an opportunity to do so.

## FACTS & PROCEDURAL BACKGROUND

Plaintiffs filed this suit on January 10, 2007, in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, naming as defendants Fallin Family Dentistry ("Fallin") and Wal-Mart. In the petition for damages, plaintiffs allege that, on or about November 14, 2005, a prescription for Clindamycin was called-in by Fallin to Wal-Mart Pharmacy #10-1102 in Baker for Mrs. Vessell. Plaintiffs further allege that Mr. Vessell went to Wal-Mart Pharmacy #10-1102 on November 17, 2005 and picked up the Clindamycin prescription for his wife. Plaintiffs contend that, after Mrs. Vessell began taking the Clindamycin, she became "extremely ill" as the Clindamycin "reacted with the other medications" that she was already being prescribed and caused the following injuries "including, but not limited

1

to, diarrhea, nausea, vomiting, abdominal pain, drowsiness, etc." Plaintiffs aver that the defendants negligently prescribed and dispensed Clindamycin, causing Mrs. Vessell to suffer the following damages: (a) Medical expenses, past, present, and future; (b) Physical pain and suffering, past, present, and future; (c) Mental anxiety and anguish, past, present, and future; (d) Loss of wages and earnings, past, present, and future; (e) Loss of consortium; and (f) Any and all other damages as will be more fully shown at the trial of this matter. Plaintiffs also contend that Mr. Vessell suffered damages including, but not limited to, loss of consortium.

On February 12, 2007, Wal-Mart served an Answer in state court, denying the allegations of the plaintiffs' petition, and also served Interrogatories and Requests for Production upon the plaintiffs. On March 12, 2007, Fallin was dismissed from the state court suit, in favor of empaneling a medical review panel pursuant to Louisiana's Medical Malpractice Act relative to plaintiffs' allegations against Fallin. Wal-Mart then removed the case to federal court, alleging that complete diversity exists as contemplated by 28 U.S.C. §1332.

On September 6, 2007, a scheduling conference was held, at which time the Court *sua sponte* raised the issue of whether the requisite jurisdictional amount is in controversy in this case for purposes of diversity jurisdiction. The Court ordered the parties to brief the issue of quantum/jurisdictional amount, which briefs were submitted in October 2007. In Wal-Mart's brief, it asserted that the Court should defer ruling on the jurisdictional issue until it had been allowed the opportunity to conduct limited jurisdictional discovery, in the form of the plaintiffs' depositions, to "elucidate the apparent value of the broad claims in the [their] Petition." In ruling on the parties' briefs, the Court determined that it was not "facially

apparent" from the plaintiffs' petition that their claimed damages will exceed $75,000.00, exclusive of interest and costs.  The Court further found that Wal-Mart was unable to satisfy its burden of proving that the requisite amount in controversy exists, through summary judgment-type evidence, because certain of plaintiffs' discovery responses, which would have provided relevant information concerning the value of their claims, were incomplete.  The Court therefore ordered that the plaintiffs produce complete responses to Wal-Mart's discovery requests and ordered that Wal-Mart file supplemental briefing on the jurisdictional amount issue after those responses were received.[1]  The Court now considers the supplemental briefing and evidence submitted by Wal-Mart, which was filed on December 3, 2007.

## **LAW & ANALYSIS**

Pursuant to 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy:  (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states.  The fact that the plaintiffs and Wal-Mart are citizens of different states is undisputed and, thus, the only issue before the Court in this report is whether the amount in controversy exceeds the jurisdictional minimum of $75,000.00.  Because plaintiffs in Louisiana state courts, by law, may not specify the numerical value of claimed damages, the removing defendant has the burden of proving, by a

---

[1] The Court also denied Wal-Mart's request to take the depositions of the plaintiffs because the plaintiffs have not filed a motion to remand or any supporting affidavits in this matter that would warrant the taking of their depositions for clarification.  The Court noted that, when a defendant doubts whether it can sustain its burden of proof upon removal, it may propound discovery requests upon the plaintiff to obtain information about the plaintiff's claims and request that the court delay a decision regarding remand pending completion of that discovery.  *See*, Ruling dated November 1, 2007, R. Doc. 9, p. 11, citing *McGraw v. Lyons*, 863 F.Supp. 430 (W.D. Ky. 1994); *Old Evangeline Downs, LLC, d/b/a Evangeline Downs Racetrack and Casino v. Reel Games, Inc., et al*, No. 06-209-B-M1.

preponderance of the evidence, that the amount in controversy exceeds $75,000.00. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000). A defendant makes that showing when it is "facially apparent" from a reading of the complaint that the plaintiff's claims are likely to exceed $75.000.00. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

If it is not "facially apparent," the court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)*; White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). All doubts and uncertainties regarding federal jurisdiction must be resolved in favor of remand. *Sutherland v. First Nationwide Mortgage Corp.*, 2000 WL 1060362 (N.D. Tex 2000). Under any manner of proof, jurisdictional facts which support removal must be judged at the time of removal, and post-petition affidavits and evidence are allowable only if relevant to that period of time. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

If a removing defendant shows that the amount in controversy is likely to exceed the federal jurisdictional amount, the burden then shifts to the plaintiff to show that it is a "legal certainty" that he will not be able to recover the jurisdictional amount – a burden which can be satisfied by: (1) showing state procedural rules binding the plaintiff to his pleadings; or (2) filing a binding stipulation or affidavit to that effect with the complaint. *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995).

As noted above, the Court determined in its November 1, 2007 Ruling that it is not "facially apparent" from the plaintiffs' petition that their claims are likely to exceed the jurisdictional minimum. The Court must therefore consider the summary judgment-type

evidence Wal-Mart has submitted with its supplemental brief.  The evidence that Wal-Mart has submitted includes plaintiffs' Supplemental Answers to Interrogatories and Requests for Production of Documents as well as various medical records and billing statements related to medical treatment Mrs. Vessell received following the incident in question.

While plaintiffs provided some additional medical records and other information regarding their claims in their supplemental discovery responses,[2] they were not able to provide a complete response to Interrogatory No. 13, which requests that they "describe with specificity each element of [their] general and special damages and, for each item of damage, set forth the amount of money you will claim at trial."  To that interrogatory, plaintiffs responded by stating that they "have not consulted with any experts in regard to damages so [they] cannot quantify specific or general damages at this time."  Considering plaintiffs' representation that they are unable to provide such information at this time, the Court cannot find that the requisite jurisdictional amount is satisfied simply based upon their failure to respond nor can the Court require the plaintiffs to obtain expert opinions relative to the valuation of their damages at this early juncture.  The plaintiffs' failure to respond to Interrogatory No. 13 is essentially the equivalent of a failure to respond to a request for admission that damages are below the jurisdictional amount, and such a failure cannot serve as the basis for removal.  *See, Powell v. National Action Financial Services, Inc.*,

---

[2] Specifically, plaintiffs submitted a set of medical records from Gastroenterology Associates.  They also indicated, relative to Wal-Mart's request for information regarding their loss of past and future wages claim, that, at the time of the incident in question, Mrs. Vessell was employed by the East Baton Rouge Parish School Broad as a bus driver earning approximately $1,000.00 monthly but that she was not working at the time of the accident because of a back injury and back surgery that she underwent in June 2005.  Plaintiffs further indicated that Mrs. Vessell has not been able to return to work since June of 2005 and was recently terminated by the East Baton Rouge Parish School Board.  *See,* Supplemental Response to Interrogatory No. 4.  Finally, plaintiffs submitted a supplemental discovery response indicating that the incident in question "contributed to and aggravated [Mrs. Vessell's] problems with acid reflux and depression."  *See,* Supplemental Response to Interrogatory No. 8.

2005 WL 1866150 (S.D. Tex. 2005)(The mere failure to respond to a request for an admission or a stipulation that damages are below the jurisdictional amount cannot be used as a basis for removal); *Davis v. BASF Corp.*, 2003 WL 23018906 (E.D. Mich. 2003)(same).  Accordingly, the Court will look to the other summary judgment-type evidence submitted by Wal-Mart to determine whether it demonstrates, by a preponderance of the evidence, that plaintiffs' claims are likely to exceed the jurisdictional minimum.

A review of the remainder of plaintiffs' discovery responses and Mrs. Vessell's medical records presented by Wal-Mart indicates that Wal-Mart has carried its burden of proving that the amount in controversy is likely to exceed $75,000.00.  First, because Mrs. Vessell contends that the incident in question "contributed to and aggravated" her problems with acid reflux and depression, the total amount of any medical bills relating to treatment and procedures performed in connection with those conditions, after November 17, 2005, is at issue in this litigation.  According to the medical billing records which have been produced, Mrs. Vessell has incurred a total of $8,485.80 for treatment of such conditions since November 2005 at Gastroenterology Associates, Lane Regional Medical Center, and Louisiana Endoscopy, Inc.[3]  Plaintiffs have not submitted billing records from Mrs. Vessell's primary care provider, Dr. T'Lane Folse, nor have they produced any pharmacy records

---

[3] Although Wal-Mart has also presented billing records from Baton Rouge Ear, Nose, and Throat Associates, which reflect a total bill of $338.00 for post-November 2005 treatment of Mrs. Vessell, Wal-Mart has not produced any actual medical records concerning such treatment, and the Court is therefore unable to determine whether such treatment is related to the conditions Mrs. Vessell alleges to have experienced as a result of the incident in question, *i.e.*, acid reflux and depression.  Moreover, although Baton Rouge Ear, Nose, and Throat is listed in one of the plaintiffs' discovery responses as one of the health care providers Mrs. Vessell has seen over the past ten (10) years, there is no indication in that discovery response that she saw a physician at that clinic relative to the conditions alleged in this lawsuit.  *See*, Supplemental Response to Interrogatory No. 11.

relating to medications prescribed to treat her conditions brought about by the incident at issue; thus, the value of Mrs. Vessell's medical specials would be even higher if those bills were considered. Additionally, gall bladder surgery has been recommended for Mrs. Vessell in the future and would contribute significantly to any future medical expense award in the event her gall bladder condition is causally linked to her consumption of Clindamycin.

According to the medical records submitted, Mrs. Vessell had an office visit with her primary care physician, Dr. Folse, on November 18, 2005, at which time he prescribed certain medications to treat swelling in her legs, cough, congestion and a sore throat. Mrs. Vessell apparently had those prescriptions filled at Wal-Mart Baker, and when her husband picked up the prescriptions, he was given the prescription of Clindamycin that is in question. On November 21, 2005, Mrs. Vessell called Dr. Folse's office and reported that she had been "real sick" since November 18, 2005, as a result of taking the "wrong prescription" provided to her by the Wal-Mart pharmacy. On November 26, 2005, she presented to Lane Memorial Hospital emergency room with complaints of epigastric pain, diarrhea, nausea, vomiting, tightness in her upper abdomen, and sharp pain in her lower abdomen. She underwent laboratory testing and was administered a GI cocktail and Toradol; was diagnosed with gastritis and a urinary tract infection; and was treated with Levaquin and Pepcid.

Mrs. Vessell returned to see Dr. Folse on December 5, 2005, again complaining of a jittery stomach, nausea, and diarrhea. She specifically stated that such conditions were a result of the "wrong medication" that she received from the Wal-Mart Baker pharmacy. Dr. Folse noted psychiatric issues and that he spoke with Mrs. Vessell "face to face" for 45 minutes because she was "very upset" about the incident involving the pharmacy since her

stomach had been "bad since then."  He diagnosed her with abdominal pain and diarrhea, ordered various laboratory tests and a stool culture, and asked that the patient recheck with him in 48 to 72 hours or go the emergency room if her condition worsened.  Mrs. Vessell was continued on numerous medications, including Nexium for her epigastric issues and Valium for her depression.

   Mrs. Vessell returned to see Dr. Folse again on January 12, 2006 and January 19, 2006, at which time she was still complaining of soreness in the mid-epigastric area, a feeling of queasiness all the time; diarrhea; an inability to eat because food upset her stomach; and leg swelling.  According to Dr. Folse's notes, Mrs. Vessell was still "convinced that *all her problems* are [secondary] to pharmacy mistake when she inadvertently got 'Clindamycin'." [Emphasis added].  Dr. Folse ordered an abdominal ultrasound, which showed multiple gallstones.  He specifically noted that, although Mrs. Vessell had multiple gallstones apparent on her ultrasound, she nevertheless attributed her symptoms to the prescription incident.  Because of Mrs. Vessell's continued complaints, Dr. Folse referred her to a gastroenterologist for further work-up and a possible colonoscopy and esophagogastroduodenoscopy (EGD).

   Mrs. Vessell saw Dr. Greg Fuselier at Gastroenterology Associates on January 24, 2006, at which time she complained of recurrent upper gastrointestinal tract symptoms, including epigastric pain nearly every day associated with nausea and constipation on and off.  Mrs. Vessell reported that, while she has had substernal hernia and reflux problems on and off for years, which had been generally well controlled with the use of Nexium on a daily basis, such conditions were no longer well controlled since she had taken a prescription several months before.  She also complained of a poor appetite and an

absence of adequate taste or altered taste in recent months, resulting in a ten pound weight loss. Dr. Fuselier diagnosed her with epigastric pain and nausea of recent onset times two months; anorexia and possible dysgeusia; and cholelithiasis (gallstones) on recent ultrasound. He ordered laboratory testing; an EGD; a colonoscopy; and a CT scan of the abdomen and pelvis.

Mrs. Vessell also saw Dr. Stephen Pollet at The Baton Rouge Clinic on March 13, 2006 for complaints of pain in her joints and muscles. Dr. Pollet diagnosed her with myalgias and arthralgias with sleep disturbance; degenerative disc disease to her lumber spine status-post surgical procedure; and depression. He noted that Mrs. Vessell had been on medications for her depression prescribed by Dr. Folse. He ordered lab work and a whole body bone scan and noted that physical therapy and a physiatry consult could be beneficial.

While Mrs. Vessell reported that her stomach problems had "resolved" during a May 4, 2006 appointment with Dr. Folse, she returned to see Dr. Fuselier on June 15, 2006, at which time she again complained of non-focal abdominal pain and diarrhea. She reported having a nervous stomach and could not do the colonoscopy procedure Dr. Fuselier had ordered. Dr. Fuselier diagnosed her with GERD, non-focal abdominal pain, non-bloody diarrhea, possible irritable bowel syndrome, left-sided abdominal and epigastric pain. He advised Mrs. Vessell to take Nexium on an empty stomach and prescribed several other medications, including Levsin. He also ordered that the colonoscopy be rescheduled with a fleet prep. The colonoscopy with cold biopsy polypectomy was performed on July 17, 2006 and revealed a diminutive polyp at 78 cm but no other diagnostic abnormalities. Mrs.

Vessell also underwent an EGD on July 17, 2006, which revealed a hiatal hernia and patchy nonerosive antral gastritis.

According to Dr. Fuselier's records, Mrs. Vessell was still complaining over the telephone of abdominal and epigastric pain, nausea, and severe constipation as of August 1, 2006, and she returned to see him for those complaints on August 30, 2006. At that time, she complained of abdominal pain rated ten on a scale of one to ten. She was diagnosed with epigastric pain of uncertain etiology and constipation. Her Nexium intake was decreased, and Dr. Fuselier referred her to a surgeon for evaluation relative to gallstone removal. The billing records from Lane Memorial indicate that Mrs. Vessell underwent another EGD with biopsy on February 2, 2007; however, no subsequent records were produced.

In addition to the approximate ten months of medical treatment that Mrs. Vessell attributes to the incident in question in this lawsuit, she is also claiming loss of past and future wages and impairment of earning capacity as a result of such incident, and the Court must therefore consider, in determining the amount in controversy, the amount of time Mrs. Vessell missed from work as a result of the accident and how much money she was earning at the time of the accident. As noted above, according to Mrs. Vessell's supplemental discovery responses, she was earning approximately $1,000.00 per month at the time of the accident as an employee of the East Baton Rouge Parish School Board. Thus, considering that she was only recently terminated, her past wage loss claim that she attributes to the incident in question (over the previous two (2) years since she was injured) would be $24,000.00 to $25,000.00, depending on exactly when she was terminated. Additionally, Mrs. Vessell alleges that her conditions resulting from the accident in question

are ongoing; that they have contributed, at least in part, to her inability to work; and that she will incur future wage loss as a result. Assuming Mrs. Vessell would continue to earn the same amount she was earning prior to the incident in question as a bus driver, her future wage loss claim through retirement age would be in the range of $156,000.00, since she is currently fifty-two years old (*i.e.*, 13 years remaining until retirement age x $12,000.00 per year = $156,000.00), bringing her total wage loss claim to over $180,000.00. The Court agrees with Wal-Mart that, even if Mrs. Vessell's wage loss claim is discounted to some degree to account for the impact of her pre-existing back injury on her ability to work, the value of plaintiffs' overall claims would nevertheless exceed the jurisdictional minimum.[4]

Finally, although the Court cannot find any cases on point relating to general damage awards for pain and suffering in cases similar to the present one (where the plaintiff contends that the wrongful prescription of a medication led to over ten months of medical treatment, pain/discomfort, several invasive procedures, and potential gall bladder surgery in the future), Mrs. Vessell's general damages could also be significant. When that figure is combined with the above figures for medical specials and wage loss, the Court finds that Wal-Mart has met its burden of proving, by a preponderance of the evidence, that plaintiffs' claims are likely to exceed the jurisdictional minimum. The burden therefore shifts to the plaintiffs to prove to a legal certainty that their claims will not exceed that amount, which, as noted above, can be demonstrated by (1) showing state procedural rules binding them to their pleadings; or (2) filing a binding stipulation or affidavit to that effect with the

---

[4] Furthermore, even if plaintiffs are ultimately unable to prove that Mrs. Vessell's alleged loss of past and future wages and loss of earning capacity (and/or her other damages) were caused by the incident in question in this lawsuit, in whole or in part, she has nevertheless asserted those allegations in her petition and thereby placed the amount of those claims in controversy in this matter for purposes of diversity jurisdiction.

complaint. Because plaintiffs have demonstrated neither, the Court finds that the requisite amount is in controversy in this case for purposes of diversity jurisdiction, and this matter should therefore continue to proceed in this Court.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Court find that jurisdiction exists as the jurisdictional amount has been met and this matter should continue to proceed in this Court.

Signed in chambers in Baton Rouge, Louisiana, January 22, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**